## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: | CASE NO. 24-11535 |
| RISE MANAGEMENT, LLC, | SECTION A |
| Debtor. | CHAPTER 11 |
| | SINGLE ASSET REAL ESTATE |

### OBJECTION TO DEBTOR'S AMENDED DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANRKRUPTCY CODE AS OF FEBRUARY 7, 2025

**NOW INTO COURT** comes David W. Asbach, Acting U.S. Trustee for Region 5, (the "UST") by and through undersigned counsel, and hereby files this objection ("Objection") to the *Amended Disclosure Statement for Plan of Reorganization Under Chapter 11 of the Bankruptcy Code as of February 7, 2025* filed by Rise Management, LLC. [ECF Doc. 152]. In support thereof, the UST respectfully states:

### STANDING

1. By virtue of the Chapter 11 filing, the administration of this case is subject to the supervision of the UST pursuant to 28 U.S.C. § 586. Pursuant to 28 U.S.C. § 586(a)(3)(B), the UST has the duty to monitor plans and disclosure statements filed in Chapter 11 cases and to comment on such plans and disclosure statements.

2. This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.[1]

---

[1] *See* In re Columbia Gas Sys. Inc., 33 F.3d 294, 295–96 (3d Cir. 1994) (noting that the UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); In re Wilson, 413 B.R. 330, 335 (Bankr. E.D. La. 2009) (finding that "the provisions of § 586(a) are intended to compliment the broader grant of power provided by § 307."); 11 U.S.C. § 307 (UST "may raise and may appear and be heard on any issue in any case or proceeding under this title").

## PROCEDURAL BACKGROUND

1. Rise Management, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, on August 7, 2024. [ECF Doc. 1].

2. The Debtor remains in possession and control of its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On February 7, 2025, the Debtor filed its *Amended Disclosure Statement for Plan of Reorganization Under Chapter 11 of the Bankruptcy Code as of February 7, 2025* (the "Disclosure Statement") and *Amended Chapter 11 Plan of Reorganization* (the "Plan"). [ECF Docs. 152 and 153]. Consideration of the Disclosure Statement is set for hearing on Wednesday, April 9, 2025. [ECF Doc. 156].

4. The UST filed a *Motion to Dismiss Case, or in the Alternative, to Convert Case to Chapter 7* on November 4, 2024. [ECF Doc. 90]. The UST also filed a *Supplement to Motion to Dismiss Case, or in the Alternative, to Convert Case to Chapter 7*. [ECF Doc. 189]. Said motions are set for hearing on Wednesday, April 9, 2025.

## LAW AND ANALYSIS

5. The Disclosure Statement should not be approved because it fails to provide adequate disclosure, and because the Plan is unconfirmable in its present form.

6. Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information." "Adequate information" is defined in §1125(a)(1) to mean information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor to make an informed judgment about the plan.

7. Adequate information is important because creditors rely on a debtor's disclosure statement to form their ideas about what sort of distribution or other assets they will receive, as

well as what risks they will likely face. In re Radco Properties, Inc., 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) (citations omitted). The primary purpose of a disclosure statement is to give creditors information necessary to decide whether to accept a plan. *See,* In re Monnier Bros., 755 F.2d 1336, 1342 (8th Cir. 1985). Without "sufficient financial and operational information to enable each participant to make an 'informed judgment' whether to approve or reject the proposed plan," the disclosure statement fails to meet the requirements of §1125(a)(1). In re Civitella, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981).

8. The Court's determination of whether a disclosure statement contains adequate information is subjective and made on a case-by-case basis. Matter of Texas Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988).

9. In this case, the Disclosure Statement does not meet the statutory requirement of adequate information for various reasons described below.

10. The bankruptcy court may refuse to approve a disclosure statement whenever doing so would be futile, i.e., when the accompanying plan could not be confirmed as a matter of law. In re Sanders, No. 14-02271-NPO, 2015 WL 7568469, at *5 (Bankr. S.D. Miss. Nov. 23, 2015) citing In re U.S. Brass Corp., 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996)). Here, even if this Court finds that the Disclosure Statement contains adequate information, there is a defect that renders the Plan inherently or patently unconfirmable. Thus, the Disclosure Statement should be denied.

**A. The Disclosure Statement and Plan Include Exculpations that Exceed Judicial Guidance**

11. The Disclosure Statement and Plan contains exculpations that, to the extent applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), exceed what is permitted under Fifth Circuit law.

12. Specifically, both the Disclosure Statement [ECF Doc. 152, p. 9] and Article 9.3 of

the Plan [attached as Exhibit 2 to the Disclosure Statement, ECF Doc. 152-1, p. 15] state the following under the heading "Exculpation":

> Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim or Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Disclosure Statement, the Plan, or any restructuring transaction under or to be implemented by and under the Plan, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Rise Management Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for Claims related to any act or omission that is determined in a Final Order of the Bankruptcy Court, which shall have exclusive jurisdiction over any such Claim, to the fullest extent provided by law, to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan, to the fullest extent provided under applicable law, but no further. The Exculpated Parties have, and upon the Effective Date and completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan.

13. "Exculpated Parties" is defined as "collectively, and in its capacity as such (a) the Debtor, (b) the present and former officers and directors of the Debtor, (c) the Reorganized Debtor, and (d) each of the respective Representatives of each of the foregoing in their individual capacities as such" [ECF Doc. 152, p. 51].

14. "Representatives" is not a defined term. Thus, there is no way for a creditor to

understand who will be exculpated under the plan.

15. To the extent applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Plan's exculpation exceeds Fifth Circuit precedent, which has affirmed that, in accordance with Pacific Lumber, "any exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . . ." Matter of Highland Cap. Mgmt., L.P., 48 F.4th 419, 437 (5th Cir. 2022). Thus, within the Fifth Circuit, exculpation cannot extend to the present and former officers and directors of the Debtor, the Reorganized Debtor, and the unidentified and undefined category of "Representatives."

16. Moreover, there is no clear temporal limit to the exculpation, but it appears that it could reach post-effective date activity by, for example, referring to distributions under the Plan, as well as the administration and implementation of the Plan. But courts have held that exculpation "only extends to conduct that occurs between the Petition Date and the Effective date." In re Mallinckrodt PLC, 639 B.R. 837, 883 (Bankr. D. Del. 2022).

17. The UST also objects to the extent the exculpation shields the Exculpated Parties who relies upon the advice of counsel. While such reliance may be raised as an affirmative defense, it should not serve as a predetermined absolute bar against liability.

18. The Disclosure Statement cannot be approved until it is amended to address these issues and explain how the Debtors intend to confirm a Plan including such provisions. Moreover, to the extent these provisions are not removed from the Plan, the UST will object at confirmation that the Plan cannot be confirmed with these provisions.

B. **The Disclosure Statement Does Not Contain Adequate Information Regarding Funding of the Plan**

19. The Disclosure Statement also contains insufficient detail regarding how the Debtor

will fund the Plan of Reorganization.

20. The Disclosure Statement asserts that the Debtor withdrew its motion seeking debtor-in-possession financing from Argyle Holdings (the "DIP Motion") [ECF-104] "due to a contribution from Existing Equity Interests" [ECF-152, p.17]. Both the UST and secured lender Bank of America had objected to the DIP Motion because of lack of information about the terms of the loan as well as the Lender [ECF-111, 113], and an evidentiary hearing was set [ECF-118]. The Debtor subsequently withdrew the DIP Motion.

21. Now, the Disclosure Statement and Plan both describe "Exit Financing" of up to $200,000.00 from "Lender" Argyle Holdings, and attaches a similar "Term Sheet" [ECF-152-8] to which the UST objected previously, including overly broad releases of the Lender, Debtor's liability for Lender's undisclosed out-of-pocket costs, vague repayment terms, providing that the Lender might be an undisclosed party other than Argyle Holdings. With the Debtor currently having zero income, it is not clear how the Debtor will repay the proposed Exit Financing.

22. The Debtor states that "Existing Equity Holders have agreed to contribution $25,000.00 to fund all necessary repairs and renovations to the Property," and that "[a]pproximately $15,000.00 has already been paid by Existing Equity Interests" [ECF-152, p. 17]. But there are no other details, no disclosure of which equity holders have contributed and in what amounts, and no documentation of any amounts contributed or paid to any entity that has made repairs.

23. Creditors cannot make an informed judgment about the funding of the Plan based on such limited financing details. Accordingly, the Disclosure Statement as drafted must be rejected.

C. **The Disclosure Statement Does Not Contain Adequate Information Regarding the Payment of Administrative Expense Claims**

24. The Disclosure Statement suggests that Administrative Expense Claims will be paid in full. With the Debtor currently having zero income, it is not clear how the Debtor will repay the Administrative Expense Claims.

25. The Disclosure Statement provides that Administrative Expenses will be paid on the later of the (i) Effective Date, or (ii) the date on which an Administrative Expense Claim because Allowed. [ECF Doc. 152]. Whereas the pro forma indicates those claims will be paid over a two-year period [ECF-152-10].

26. The Disclosure Statement estimates Administrative Expense Claims at $80,000.00 total [ECF-152, p. 24]. The most recently filed Monthly Operating Report for January 2025 indicates that the Debtor had a total of $440.12 cash on hand [ECF-172], and that the Debtor is receiving zero rental income. Thus, the Debtor lacks the income and cash on hand to make the Administrative Expense payment(s), and the Disclosure Statement provides no information about how Debtor would do so given these circumstances.

D. **The Disclosure Statement Does not Contain Adequate Information Regarding Causes of Actions Against Insiders**

27. The Plan does not reserve causes of action against insiders, nor does the Disclosure Statement explain why those causes of action are being abandoned—it merely states that "the Debtor does not intend to bring any Avoidance Actions after entry of the Confirmation Order" [ECF-152, p. 33].

28. The Debtor's Statement of Financial Affairs reflects several transfers under Questions # 4 and 30 to the following insiders: Taylor Park; Metro Wide Apartments II, LLC; Bruno, Inc.; 635 N. Scott St. LLC; Mercury Capital; Downtown Development Group, LLC; West Centro, LLC; Josh Bruno; Veterans Holdings, LLC.

29. The Disclosure Statement indicates the Debtor intends to pursue recovery of a number of claims against former tenants for "lease defaults and damages," but that "the Debtor does not intend to bring any Avoidance Actions after entry of the Confirmation Order" [ECF-152, pp. 32-33].

30. The UST objects to the Disclosure Statement because it provides no explanation regarding why the Debtor does not intend to pursue Avoidance Actions.

### E. The Disclosure Statement and Plan Violate Jurisprudence Regarding Voting and Absolute Priority

31. The Plan provides that Class 6 "Equity Interests" retain their equity interests, but that no distributions shall be made until (a) all Unclassified Claims except for Priority Claims have been paid in full; and (b) the Debtor is current on all payments to the holders of Priority Claims and the Class 2, 3, 4, and 5 claims as required by [the] Plan" [ECF-152, p. 8].

32. Class 5 General Unsecured Claims are estimated to receive only 13.61% of the total owed [ECF-152, p. 8]. The UST will object to confirmation of the Plan on grounds that the provision violates the absolute priority rule because it permits the equity holders to retain their equity (and to receive distributions) notwithstanding the fact that unsecured creditors are not paid in full. *See* 11 U.S.C. §1129(b)(2)(B)(i)-(ii); Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 442, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999); In re Eletson Holdings Inc., 664 B.R. 569 (Bankr. S.D.N.Y. 2024). The UST reserves this objection for confirmation.

33. The Disclosure Statement further provides that Equity Interest Holders are "Impaired. Entitled to Vote." The UST objects because equity holders in the case are insiders who are not entitled to vote on the Plan.

## **CONCLUSION**

**WHEREFORE**, the United States Trustee prays that this Honorable Court consider this Objection, and award all general and equitable relief to which it is justly entitled in the premises.

March 31, 2025

Respectfully submitted,
DAVID W. ASBACH
Acting United States Trustee
Region 5, Judicial Districts of
Louisiana and Mississippi

By: */s/ Christy R. Bergeron*
CHRISTY R. BERGERON, Trial Attorney
La. Bar # 22944
600 S. Maestri Place, Suite 840-T
New Orleans, LA 70130
Telephone: (504) 589-2591
Christy.Bergeron@usdoj.gov