**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | § § | Case No. 24-11535 |
| **Rise Management, LLC** | § § | Chapter 11 |
| Debtor | § § | Section "A" |

**BRIEF IN SUPPORT OF CONFIRMATION OF THE
SECOND AMENDED COMBINED PLAN AND
DISCLOSURE STATEMENT DATED OCTOBER 15, 2025**

West Centro, LLC ("Debtor") files this Brief in Support of Confirmation (the "Brief") of the *Debtors' Second Amended Combined Plan and Disclosure Statement Dated October 15, 2025* (as may be further amended or supplemented, the "Plan") and respectfully states as follows:

**Preliminary Statement[1]**

1. The Plan is confirmable in all respects under section 1129 of the Code.[2] All classes have voted to accept the Plan is supported by the two Court-appointed Estate fiduciaries charged with protecting the interests of the Estate and maximizing the recovery to unsecured creditors.

2. The Plan is the result of intense and protracted arm's length negotiations with the Debtor's senior secured lender, Bank of America, N.A. ("BOA") and other interested parties. The support for the Plan from BOA came after the Debtor's members agreed to fund a significant cash infusion post-confirmation.

3. The Debtor submits this Brief to show that the Plan meets the plan confirmation standards contained in section 1129 of the Code and should be confirmed.

**Background**

4. On May 21, 2025, the Court entered an order approving the disclosure statement

---

[1] All capitalized terms not defined herein have the meaning given to them in the Plan.
[2] All section references herein refer to 11 U.S.C. (the "Code") unless otherwise stated.

submitted in connection with the Plan (the "Disclosure Statement"), and established deadlines relating to solicitation and tabulations of votes (the "Disclosure Statement Order").

5. Pursuant to the Disclosure Statement Order, the Trustee has effected proper service and notice of (i) the Disclosure Statement Order, (ii) the approved Disclosure Statement, (iii) the Plan, and, (iv) Ballots.

## Argument and Authorities

### I. The Plan satisfies all confirmation requirements.

6. The Plan satisfies the requirements for confirmation of a plan of reorganization set forth in sections 1129(a) and (b).

7. Under the Code, the proponent of a Chapter 11 plan must demonstrate, by a preponderance of the evidence, that the plan meets the requirements of each subsection of section 1129(a). *See In re Briscoe Enters., Ltd. II*, 994 F.2d. 1160, 1165 (5th Cir. 1993). As demonstrated below and by the evidence that will be presented at the Confirmation Hearing (including proffers of testimony), the Plan satisfies the confirmation requirements of the Code and should be confirmed.

### A. The Plan complies with the provisions of the Code as required by section 1129(a)(1).

8. Section 1129(a)(1) requires that a Chapter 11 plan comply with the applicable provisions of the Code. Although that section appears broad, it is principally aimed at compelling compliance with sections 1122 and 1123, which govern the classification of claims and the contents of plans. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); Sen. Rep. No. 95a-989, 95th Cong., 2d Sess. 126 (1978) ("[P]aragraph (1) requires that the plan comply with the applicable provisions of chapter 11, such as sections 1122 and 1123, governing classification and content of a plan.") The Plan properly classifies claims pursuant to section 1122 and complies with the provisions of

section 1123.

      a. <u>The Plan properly classifies claims and interests as required by section 1122.</u>

9. Section 1123(a)(1) requires that a plan classify all claims, with the exception of certain priority claims, and all interests, and that such classification complies with sections 1123(a)(1) and 1122. Section 1122(a) provides that "a plan may place a claim or an interest in a particular Class only if such claim or interest is substantially similar to other claims or interests of such class." 11 U.S.C. § 1122(a). Notably, the Code does not require the converse, *i.e.*, that all similar claims be placed in but one class. *E.g.*, *In re Premiere Network Servs., Inc.*, 333 B.R. 130, 133 (Bankr. N.D. Tex. 2005) ("While the Code expressly addresses classification of dissimilar claims together, it does not address the problem of putting similar claims in different classes.") (citing *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 585 (6th Cir. 1986)); *In re Waterways Barge P'ship*, 104 B.R. 776, 784 (Bankr. N.D. Miss. 1989) ("In essence, this statute says that it is impermissible to place dissimilar claims within a class, but there is no express prohibition against placing similar claims in separate classes."); *In re Mortgage Inv. Co. of El Paso, Tex.*, 111 B.R. 604, 613 (Bankr. W.D. Tex. 1990) ("[B]ut all similar claims or interests are not required to be placed in the same class.").

10. A plan proponent has significant flexibility in classifying claims under section 1122, as long as a reasonable legal and/or factual basis exists for the proposed classification, and all claims within a particular class are substantially similar. *See, e.g.*, *In re Briscoe Enters., Ltd. II*, 994 F.2d at 1167 (recognizing that while it is improper to classify claims to gerrymander the vote, there may be good business reason to justify separate classification); *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 114 (Bankr. N.D. Tex. 2002) (finding separate classification of unsecured creditor was proper). Thus, the relevant inquiry under section 1122(a) is whether Claims in a Class are substantially similar to other Claims in that Class.

11. Article IV of the Plan reasonably provides for classification of Claims and Equity Interests into six Classes based upon (a) their secured/unsecured status, (b) differences in the legal nature and/or priority of such Claims and Equity Interests, and (c) other relevant considerations:[3]

   Class 1: Tenant Deposit Claims

   Class 2: BOA Secured Claim

   Class 3: Capital Advisors Secured Claim

   Class 4: City of New Orleans Secured Claim

   Class 5: General Unsecured Claims

   Class 6: Equity Interests

12. The classification scheme in the Plan is reasonable and necessary to implement the Plan.

13. <u>Secured Claims</u>. The Plan classifies the BOA Secured Claim in Class 2, the Capital Advisors Secured Claim in Class 3, and the City of New Orleans Secured Claim in Class 4. The Class 2 Claim will be paid in full since it is fully secured. The Class 3 Claim will be allowed in the amount of $250,000.00, which is the portion of Capital Advisor's claim that is secured. The Class 4 Claim, which is for unpaid property taxes, will also be paid in full.

14. <u>Unsecured Claims</u>. With respect to unsecured claims, all general unsecured claims are placed in Class 5 (General Unsecured Claims) and are accorded the same treatment.

15. <u>Equity Interests</u>. According to the Plan, Class 6 consists of the Equity Interests in the Debtor. The Equity Interests are classified in Class 6 because all Equity Interests have the same legal rights and will be treated the same. *See In re Premiere Network Servs., Inc.*, 333 B.R. at 134 ("A creditor with a 'different stake in the future viability' of the reorganized debtor has a non-creditor

---

[3] In accordance with section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

interest that may justify separate classification of its claim."); 7 COLLIER ON BANKRUPTCY ¶ 1122.03 (16th ed. 2025) ("Claims and interests are inherently different.")

16. The classification of Claims and Equity Interests in the Plan therefore complies with section 1122.

      b. <u>The Plan complies with the requirements of section 1123.</u>

17. Section 1123 enumerates the mandatory and permissive contents of a Chapter 11 plan. The Plan contains each mandatory provision and several of the permissive provisions listed in section 1123.

18. The Plan contains the following mandatory provisions required by section 1123(a):

    a. The Plan designates Classes of Claims and Equity Interests, other than Claims of a kind specified in sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Code. *See* 11 U.S.C. § 1123(a)(1). The treatment of such unclassified Claims is contained in Article IV of the Plan.

    b. Section 1123(a)(2) requires that a plan specify any class of claims or interests that is not impaired under the plan. 11 U.S.C. § 1123(a)(2). The Plan meets this requirement by stating, in Article IV, that Claims in Class 1 are Unimpaired. *See* Art. IV, Section C of the Plan.

    c. Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). Article II of the Plan identifies Claims and Equity Interests in Classes 2, 3, 4, 5, and 6 as being Impaired, and specifies the treatment accorded to Claims and Equity Interests in each such Class.

    d. Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11U.S.C. § 1123(a)(4). The Plan so provides. *See* Article IV of the Plan.

    e. The Plan details adequate means for implementation of the Plan. *See* 11 U.S.C. § 1123(a)(5). The Plan describes in detail, among other things, provisions for plan payments, equity infusions of the Debtor's members, and the vesting of assets in the Post-Effective Date Debtor. *See* Article V of the Plan.

    f. Section 1123(a)(7) requires that the plan's provisions with respect to the manner of selection of any director, officer, or trustee, or any successor thereto, be "consistent with the interests of creditors and equity security holders and with

public policy . . . ." 11 U.S.C. § 1123(a)(7). The Plan complies with this provision by providing, in section 4.10, that the Post-Effective Date Debtor will be managed by its Manager, Cullan Maumus.

19. Section 1123(b) describes the permissive provisions a plan may contain. The Plan contains some of these permissive plan provisions as well as a number of additional appropriate provisions that are not inconsistent with the applicable provisions of the Code:

    a.    The Plan provides in Article VI for the acceptance of executory contracts, in conformity with sections 1123(b)(2), 1129(a)(1), and 365(a) and (d)(2). *See* 11 U.S.C. § 1123(b)(2).

    b.    The Plan provides for the modification of rights of secured Claims against the Debtor. *See* 11 U.S.C. § 1123(b)(5).

20. The Plan complies with both section 1122 and with the mandatory and permissive provisions of section 1123. Accordingly, the Plan satisfies the requirements of section 1129(a)(1).

**B. The Debtor has complied with Title 11 as required by section 1129(a)(2).**

21. Section 1129(a)(2) provides that a court may confirm a plan of reorganization if "the proponent of the plan complies with applicable provisions of this title." The principal purpose of section 1129(a)(2) is to ensure that the plan proponent has complied with the disclosure and solicitation requirements of section 1125 in soliciting acceptances of the plan. *In re Cypresswood Land Partners*, 409 B.R. 396, 424 (Bankr. S.D. Tex. 2009) ("Bankruptcy courts limit their inquiry under § 1129(a)(2) to ensuring that the plan proponent has complied with the solicitation and disclosure requirements of § 1125."); *In re Landing Assocs., Ltd.*, 157 B.R. 791, 811 (Bankr. W.D. Tex. 1993) ("In fact, the legislative history mentions the provision only in passing, offering as an example of compliance that the debtor meet the disclosure requirements of § 1125 to satisfy § 1129(a)(2).").

22. Section 1125(b) provides:

    An acceptance or rejection of a plan may not be solicited after the commencement of

the case under this title from a holder of a claim or interest with respect to such claim or interest, unless at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

11 U.S.C. § 1125(b).

23. As noted earlier, this Court has approved the Debtor's Disclosure Statement pursuant to section 1125 as containing "adequate information" of a kind and in sufficient detail to enable hypothetical reasonable investors typical of the Debtor's creditors to make an informed judgment whether to accept or reject the Plan.

24. Section 1126 specifies the requirements for acceptance of a plan of reorganization. Under section 1126, only holders of allowed claims and allowed equity interests in impaired classes of claims or equity interests that will retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan. Based upon the foregoing, the requirements of section 1129(a)(2) have been satisfied.

### C. The Proponents have proposed the Plan in good faith and not by any means forbidden by law in accordance with section 1129(a)(3).

25. Section 1129(a)(3) dictates that a plan be "proposed in good faith and not by any means forbidden by law." That statute requires that good faith be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan. *Fin. Sec. Assurance Inc. v. T-H New Orleans L.P. (In re T-H New Orleans L.P.)*, 116 F.3d 790, 802 (5th Cir. 1997); *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995). "Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of Section 1129(a)(3) are satisfied." *McCormick*, 49 F.3d at 1526; *see also United Marine, Inc.*, 197 B.R. 942, 947 (Bankr. S.D. Fla. 1996); *In re SM 104 Ltd.*, 160 B.R. 202, 243-44 (Bankr. S.D. Fla. 1993).

26. The Plan is clearly proposed in good faith by the Debtors because its purpose is to

maximize the value of the Estate and to effectuate a successful reorganization. The Plan is a result of hard, arm's length bargaining between the Debtor, BOA, and other participating parties. It provides for new cash for creditor payment through the Equity Infusions to pay BOA and other obligations under the Plan. In determining that the Plan has been proposed in good faith, the Court should examine the totality of circumstances surrounding the formulation of the Plan and the filing of the Chapter 11 Case. *See In re JT Thorpe Co.*, 308 B.R. 782, 787 (Bankr. S.D. Tex. 2003). After consideration of all facts presented, the Plan satisfies the requirements of section 1129(a)(3).

### D. All payments have been properly disclosed as required by section 1129(a)(4).

27. Section 1129(a)(4) requires that any payment made by the plan proponent be found by the Court to be reasonable, and is directed primarily at policies of award and payment of professional fees from the estate in Chapter 11 cases. *See* 7 Collier on Bankruptcy ¶ 1129.02 (16th ed. 2014) ("Section 1129(a)(4) requires that the bankruptcy court exercise substantive control over fees and costs related to confirmation and the chapter 11 case . . . All professionals employed by the estate, for example, must have their employment approved and fees reviewed."). In other words, the Code requires the disclosure to the Bankruptcy Court of all professional fees and expenses, and such fees and expenses must be subject to Bankruptcy Court approval. *In re Texaco, Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988).

28. The Debtor will not make any payments to estate professionals "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," unless such payments either have been approved by the Court as reasonable or are subject to approval of the Court as reasonable, thus satisfying the requirements of section 1129(a)(4). *See In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990).

29. Article IV, Section D of the Plan provides for the payment of only "Allowed"

Administrative Claims, and specifically provides that such claims will be subject to approval and allowance pursuant to the applicable provisions of the Code. *See In re Elsinore Shore Assocs.,* 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied when the plan provided for payment of only "allowed" administrative expenses). In addition, Article IX of the Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for compensation of Professional Persons and reimbursement of expenses under sections 330, 331, or 503(b) of the Code. Accordingly, the Plan fully complies with the requirements of section 1129(a)(4).

### E. The Proponents have properly disclosed the identity of individuals who will hold positions with the Debtor after confirmation of the Plan as required by section 1129(a)(5).

30. Section 1129(a)(5) requires that the plan proponent disclose the identity of certain individuals who will hold positions with Post-Effective Date Debtor. 11 U.S.C. § 1129(a)(5). Article V, Section A(7) of the Plan provides that MagNola Ventures, LLC, through Cullan Maumus, shall continue as Manager of the Post-Effective Date Debtor. Thus, the Plan complies with section 1129(a)(5).

### F. Section 1129(a)(6) is not applicable to the Plan.

31. Section 1129(a)(6) requires, with respect to a debtor whose rates are subject to governmental regulation following confirmation, that appropriate governmental approval has been obtained for any rate change provided in the plan, or that such rate change be expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6). Because the Debtor does not conduct operations in a regulated industry, section 1129(a)(6) is inapplicable to the Plan.

### G. The Plan meets the "best interest of creditors" test of section 1129(a)(7).

32. Section 1129(a)(7) requires that a plan of reorganization meet the "best interest of

creditors" test. Under that test, each holder of a claim or interest must either accept the plan or receive in terms of present value no less under the plan than what such person would have received in a Chapter 7 liquidation. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988). Such an analysis requires a determination of the value of the plan distributions in order to analyze whether creditors are receiving at least the equivalent of what they would receive in a Chapter 7 case. *In re Mortgage Inv. Co. of El Paso*, 111 B.R. 604, 615 (Bankr. W.D. Tex. 1990) (citing *In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985), *aff'd*, 785 F.2d 1033 (5th Cir. 1986)).

33. The Debtor has considered the effects that Chapter 7 liquidation would have on the amount of cash proceeds that would otherwise be available for distribution to the Debtor's creditors. As shown in Article VII of the Plan, in a liquidation under Chapter 7, the value of the Estate would diminish substantially due to, among other things: (a) the increased costs and expenses of liquidation under Chapter 7 arising from fees payable to the Chapter 7 trustee and attorneys and other professional advisors to such trustee; (b) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation; (c) further erosion of the value of the Debtor's assets in the context of an expedited liquidation required under Chapter 7; and (d) cost and expense attributable to the time value of money resulting from what is likely to be a more protracted proceeding. Consequently, the Debtor believes that confirmation of the Plan will provide each holder of a Claim in an Impaired Class with a greater recovery than such holder would have received under a Chapter 7 liquidation of the Debtor.

### H. An Impaired Class accepted the Plan in satisfaction of section 1129(a)(8).

34. Section 1129(a)(8) of the Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Pursuant to section 1126(c), a class of impaired

claims accepts a plan if holders of at least two-thirds in dollar amount and more than one half in number of the allowed claims in that class submitting ballots vote to accept the plan. In this case, all impaired classes that submitted ballots (Classes 2, 3, and 5) voted to accept the Plan.

### I. The Plan treats the holders of priority and tax claims in accordance with section 1129(a)(9).

35. Section 1129(a)(9) provides guidelines for the treatment of claims entitled to priority under section 507(a)(l)–(8). Under section 1129(a)(9)(A), holders of claims under sections 507(a)(2) and (a)(3) must receive cash equal to the allowed amount of such claim. Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise agreed to a different treatment, holders of claims under sections 507(a)(1) and (a)(4)–(a)(7) must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the Plan or, if not, cash equal to the allowed amount of such claim. Under Article IV of the Plan, holders of Allowed Other Priority Claims (claims other than Administrative Claims and Priority Tax Claims entitled to priority under section 507(a) of the Code) will be paid in full. Accordingly, the Plan meets the requirements of sections 1129(a)(9)(A) and 1129(a)(9)(B).

### J. The Plan has been accepted by Impaired Classes without counting insiders in accordance with section 1129(a)(10).

36. If a plan has any impaired class of claims, section 1129(a)(10) requires that at least one such impaired class of claims vote to accept the plan, determined without including the acceptance of the plan by any insider. 11 U.S.C. § 1129(a)(10); *see also In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 111 (Bankr. W.D. Tex. 1987). All impaired classes casting ballots (Classes 2, 3, and 5) have accepted the Plan. Thus, the Plan satisfies the requirements of section 1129(a)(10).

### K. The Plan is feasible as required by section 1129(a)(11).

37. Section 1129(a)(11) requires the Court to find that the Plan is feasible, and that

"[c]onfirmation of the plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The feasibility requirement encompasses two determinations: (i) that the provisions of the plan can realistically be consummated, and (ii) if consummated, the plan will enable the debtor to emerge from bankruptcy as a viable entity. *See In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506-07 (Bankr. S.D. Tex. 1989).

38. The first prong requires the court to examine whether, as a practical matter, the plan can be performed according to its provisions. *See In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985); *see also In re Seatco, Inc.*, 259 B.R. 279, 288 (Bankr. N.D. Tex. 2001) (noting that feasibility means that "the reorganized debtor can perform the plan and make those payments promised to it under the plan"). The Plan contemplates that obligations under the Plan will be funded through operations of the Debtor and equity infusions from the sale of real property owned by Granaio, LLC. JBIT, which is contributing the funds from the Granaio, LLC sale, is also providing a backstop up to $200,000.00 to fund Plan obligations, if needed.

    **L. The Plan provides for payment of all required statutory bankruptcy fees in accordance with section 1129(a)(12).**

39. Section 1129(a)(12) requires that certain fees listed in 28 U.S.C. § 1930, determined by the Court at the hearing on confirmation of a plan, be paid or that provision be made for their payment. 11 U.S.C. § 1129(a)(12). Such fees incurred through confirmation of the Plan have either been paid by the Debtor during the pendency of this Chapter 11 Case or will be paid on or before the Effective Date in accordance with Article IV section D(2) of the Plan. Thus, the requirements of section 1129(a)(12) have been satisfied.

    **M. Section 1129(a)(13) governing retiree benefits as defined under the Code does**

      **not apply to the Plan.**

40. The Debtor does not maintain any retiree benefits as such term is defined in section 1114. Accordingly, section 1129(a)(13) is not applicable.

    **N. Section 1129(a)(14) is not applicable in this Chapter 11 Case.**

41. Section 1129(a)(14) imposes certain requirements on debtors who have domestic support obligations mandated by judicial or administrative order or by statute. The Debtor is not required to pay a domestic support obligation, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) is inapplicable.

    **O. Section 1129(a)(15) is not applicable in this Chapter 11 Case.**

42. Section 1129(a)(15) dictates certain requirements that must be met when the holder of an allowed unsecured claim objects to confirmation of a Chapter 11 plan filed by an individual debtor. The Debtor is not an individual, and therefore section 1129(a)(15) is inapplicable.

    **P. Section 1129(a)(16) is not applicable in this Chapter 11 Case.**

43. Section 1129(a)(16) conditions plan confirmation on the fact that all transfers under the plan will be made in accordance with applicable "nonbankruptcy law that governs the transfer of property by a corporation or trust that is not a money, business, or commercial corporation or trust." Congress has indicated that this provision was meant to "restrict the authority of a trustee to use, sell, or lease property by a nonprofit corporation or trust." H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 145 (2005). The thrust of the provision is to limit the permissible transfers by nonprofit entities. Because the Debtor and the Post-Effective Date Debtor are moneyed, businesses, or commercial corporations, section 1129(a)(16) is inapplicable.

    **Q. The requirements under section 1129(b) do not apply.**

44. If a plan of reorganization satisfies all of the requirements of section 1129(a) other than

section 1129(a)(8) (requiring all impaired classes to accept the plan), the plan may be confirmed pursuant to section 1129(b). Since all impaired classes have accepted the Plan, section 1129(b) does not apply.

45. An objection to the Plan filed by the U.S. Trustee alleged that the Plan did not satisfy the absolute priority rule. The absolute priority rule applies when an impaired class of creditors rejects the plan. "There are two conditions for a cramdown. First, all requirements of § 1129(a) must be met (save for the plan's acceptance by each impaired class of claims or interests, see § 1129(a)(8))." Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship, 526 U.S. 434, 441, 119 S.Ct. 1411, 1415, 143 L.Ed.2d 607, 615 (1999)

46. An exception to the absolute priority rule is new value.

> 11 U.S.C. § 1129(b)(2)(B). This provision, dubbed the "absolute priority rule," generally requires that all unsecured creditors be paid in full before equity security [**44] holders are allowed to retain any ownership interest in the debtor. See *Liberty Nat'l Enters. v. Ambank La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 654 (9th Cir. 1997); *In re Bonner Mall P'ship*, 2 F.3d 899, 906-07 (9th Cir. 1993). There is an exception to this rule, or perhaps a corollary to it, see *Bonner Mall*, 2 F.3d at 906-07, known as the "new value exception." The new value exception to the absolute priority rule allows junior interest holders (e.g. shareholders of a corporate debtor) to receive a distribution of property under a plan if they offer "value" to the reorganized debtor that is: (1) new; (2) substantial; (3) money or money's worth; (4) necessary for a successful reorganization; and (5) reasonably equivalent to the value or interest received. *Id.* at 909.
>
> Comput. Task Grp., Inc. v. Brotby (In re Brotby), 303 B.R. 177, 195 (B.A.P. 9th Cir. 2003)

47. The Court previously questioned, based on the contributions/guarantees of JBIT, whether the other members of the Debtor were contributing sufficient capital to retain their equity. As new value is an exception to the absolute priority rule, new value is only an issue if the absolute priority rule is applicable. In this case, the Debtor satisfying the requirements of 11 U.S.C. 1129(a)(8) has rendered moot the absolute priority rule and any issues related to new value.

## II. The treatment of executory contracts in the Plan is appropriate.

48. The Plan constitutes a motion under section 365(a) for authorization to accept executory contracts and unexpired leases as provided for in the Plan. Section 365(a) states that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor" if such action represents a reasonable exercise of its business judgment. 11 U.S.C. § 365(a). If the debtor's business judgment has been reasonably exercised, a court should approve the proposed assumption or rejection. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Grp. of Institutional Investors v. Chicago, M., St. P. & P. Co.*, 318 U.S. 523. 550 (1943); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re RLR Celestial Homes, Inc.*, 108 B.R. 36, 46 (Bankr. S.D.N.Y. 1989). Under the business judgment standard, courts will approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc., v. Richmond Metal Finishers*, 756 F.2d 1043, 1046-47 (4th Cir. 1985). Section 365(b) provides that a debtor in possession may only assume an executory contract or an unexpired lease if the debtor cures any defaults existing under such agreement. *See* 11 U.S.C. § 365(b). Section 365(f)(2) provides that the debtor in possession may assign an executory contract if such contract is assumed and if the assignee provides adequate assurance of future performance of such contract. *See* 11 U.S.C. § 365(f)(2).

49. Pursuant to Article VI of the Plan, the Proponents will assume, as of the Effective Date, any executory contract or unexpired lease that has not been previously assumed or rejected by the Debtor pursuant to section 365(a).

## III. The Plan meets the standards of section 1129(d) inasmuch as the principal purpose of the Plan is not the avoidance of taxes or section 5 of the Securities Act of 1933.

50. Section 1129(d) states that on the request of a governmental unit, "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of

the application of Section 5 of the Securities Act of 1933." The principal purpose of the Plan is not the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933. The Plan provides for the payment of Allowed Priority Tax Claims in full. *See* Plan § 2.2. Therefore, no governmental unit can meet its burden under section 1129(d), and the Plan should be confirmed.

## Conclusion

51. Based on the foregoing, the Debtor submits that the Plan fully complies with and satisfies all applicable requirements of the Code necessary for the Plan to be confirmed. The Debtor, therefore, request that the Court confirm the Plan.

> Respectfully submitted,
>
> */s/ Patrick S. Garrity*
> PATRICK S. GARRITY (#23744)
> ALBERT J. DERBES, IV (#20164)
> THE DERBES LAW FIRM, LLC
> 3027 Ridgelake Drive
> Metairie, LA 70002
> Telephone: (504) 837-1230
> Facsimile: (504) 837-2214
> Email: pgarrity@derbeslaw.com

## Certificate of Service

I hereby certify that on October 16, 2025, a copy of the foregoing was duly served by email through the Court's Notice of Electronic Filing System to the parties listed below.

- Christy Renee Bergeron on behalf of U.S. Trustee Office of the U.S. Trustee
  Christy.Bergeron@usdoj.gov

- Carey L. Menasco on behalf of Creditor BANK OF AMERICA, N.A.
  clmenasco@liskow.com

- Michael D. Rubenstein on behalf of Creditor BANK OF AMERICA, N.A.
  mdrubenstein@liskow.com, lschnabel@Liskow.com

- Office of the U.S. Trustee
  USTPRegion05.NR.ECF@usdoj.gov

- Rachel Thyre Vogeltanz on behalf of U.S. Trustee Office of the U.S. Trustee
  rachel@rachel.law

                                                  */s/ Patrick S. Garrity*
                                                  Patrick S. Garrity (23744)